# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY VERNON | : |
| | :     CIVIL ACTION NO. |
| | :     2:18-cv-03902-ER |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| INTERNATIONAL PAPER COMPANY, | : |
| *et al.* | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2018, upon consideration of Defendant Owens-Illinois, Inc's Motion to Dismiss Plaintiff's Amended Complaint and Plaintiff's Opposition thereto, it is hereby **ORDERED** and **DECREED** that the Motion is **DENIED**.

_____
The Honorable Eduardo C. Robreno

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HARRY VERNON | : | |
| | : | CIVIL ACTION NO. |
| | : | 2:18-cv-03902-ER |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| INTERNATIONAL PAPER COMPANY, | : | |
| *et al.* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT OWENS-ILLINOIS INC.'S MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

This case concerns asbestos exposure in Pennsylvania and New Jersey due to the conduct of Defendant International Paper Company ("International Paper") and Defendant Owens-Illinois, Inc. ("O-I"), which caused seventy-nine (79) year-old Plaintiff Harry Vernon to be diagnosed with mesothelioma in April of this year. The sources of his exposure are pled in detail in Plaintiff's Amended Complaint, a history that spans two separate time frames and encompasses both occupational and non-occupational exposure. *See*, **Exhibit A** (ECF No. 4).

Plaintiff's later exposure, which occurred in an occupational capacity from 1967-2000 – a thirty-three year (33) period – took place when Plaintiff worked as a forklift operator for International Paper at its manufacturing facility located at 2100 Byberry Rd., Philadelphia, Pennsylvania, where he was exposed to asbestos from, among other sources, asbestos-containing pipe covering, forklift brake dust, and using an air hose to blow out asbestos-containing dust and debris from plant machines.

2

Plaintiff's earlier exposure, which is the subject of O-I's instant Motion to Dismiss, occurred from 1955-1970, and for less frequent periods thereafter. During that time, Plaintiff lived at 125 Bramau Avenue, Pine Hill, New Jersey. About five miles away from his house, on Jackson Road in Berlin, New Jersey, O-I operated a manufacturing facility where it manufactured asbestos-containing insulation called Kaylo. Approximately one mile away from Plaintiff's house, on New Freedom Rd. in Pine Hill, New Jersey, there was a dump site that Plaintiff walked by almost twice daily. At that site, O-I dump trucks – recognizable by "Owens Illinois" on the side of them – dumped and discarded asbestos-containing material and debris. Plaintiff testified there was a portion of the asphalt roadway on New Freedom Road about the length of a city block that turned from black to white, covered in asbestos dust. This dump site and adjacent roadway had no warnings or protections about asbestos and associated health hazards. This type of exposure caused by O-I – manufacturing, transporting and discarding asbestos-containing products, materials, and debris – are recognized causes of action under both Pennsylvania and New Jersey law for residents and bystanders.

O-I's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 7) claims that Plaintiff's Amended Complaint fails to provide sufficient facts to state any claim for relief, arguing that O-I did not owe a duty of care to Plaintiff. O-I's casts before this Court the issue of duty as if no one has ever brought a viable claim of any kind for being exposed to a toxic substance, including asbestos, outside of a premises in a non-occupational setting; and that no one has ever brought a viable claim against an asbestos-containing product manufacturer for conduct that occurred in the 1940s, 1950s or 1960s. Both of those claims are simply legally and factually untrue and will be proven untrue during this case. Further, O-I argues it did not owe a duty because it thinks the Plaintiff's exposure could not have caused his mesothelioma, as it plainly writes without any

citation: "No science – even today – supports that such ambient exposure is linked to disease." *See*, ECF No. 7, p. 7. Such a bald assertion is not only misstated to bolster O-I's claim, but is both scientifically and medically false and at this stage of litigation entirely improper.

Even at the early stage of litigation, based upon evidence and expert opinion, Plaintiff will prove that:

- O-I manufactured asbestos-containing Kaylo from at least 1955-1958, five miles away from where Plaintiff lived;

- O-I used its trucks to haul, dump, and discard asbestos-containing products, material and debris one mile away from where Plaintiff lived;

- Plaintiff's exposure to asbestos fibers during that time from O-I's conduct – by living his daily life in a residential area with substantially elevated levels of asbestos-contaminated air, above that of ambient, from the manufacture of asbestos-containing products and the dumping and discarding of asbestos-containing and covered material and debris – was a substantial factor in causing his diagnosed mesothelioma;

- at all relevant times O-I knew about the hazards of asbestos exposure to persons just like the Plaintiff well before Plaintiff resided in New Jersey in 1955, studied the hazards of its Kaylo product, but failed to provide any warnings or protections[1]; and

- reliable and authoritative scientific studies and expert opinions, over decades, have proven definitively that among people who live in areas with asbestos manufacturing plants – let alone a dump site for discarded asbestos-containing waste – non-occupational, environmental exposures pose significant, elevated risks and are substantial factors in the incidence of mesothelioma as compared to average location incident rates.

Ignoring this factual and scientific background, O-I's moves to dismiss Plaintiff's Amended Complaint on the sole basis that New Jersey substantive law, not Pennsylvania, should

---

[1] On October 2, 2018, Plaintiff served O-I with a Notice of Fed. R. Civ. P. 30(b)(6) Deposition and Requests for Production of Documents, both of which are attached hereto as **Exhibit B** and **Exhibit C**, respectively. To date, O-I has not responded and has provided no discovery of any kind in this case.

apply and under New Jersey law Plaintiff's Amended Complaint fails to state *any* cognizable legal claim. O-I does not argue that Plaintiff's Amended Complaint is improperly pled under Pennsylvania law. O-I's Motion should be denied outright.

Initially, in this case there is no conflict of laws – a false conflict exists – and therefore the Court need not decide the choice of law issue and can simply rely interchangeably on the laws of both states. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).  But more broadly, no matter which forum's substantive law governs – Pennsylvania's or New Jersey's – the principles and legal standards for liability are the same: negligence, defective design and manufacture of asbestos-containing products, failure to warn, and environmental exposure. No matter the language, Plaintiff's Amended Complaint satisfies all pleading requirements of both states. Most importantly, under basic negligence principles, Plaintiff's factual allegations state a cognizable claim where O-I owed Plaintiff a duty of care, breached that duty, and caused Plaintiff's mesothelioma.

## PROCEDURAL HISTORY

On August 6, 2018, Plaintiff filed a Complaint in the Court of Common Pleas – Philadelphia County against Defendant International Paper and Defendant O-I. On September 12, 2018, O-I removed the case to this Court (ECF No. 1). On September 13, 2018, Plaintiff testified at his trial and discovery depositions; all parties were present and questioned Plaintiff in detail about his sources of asbestos exposure. Plaintiff's deposition transcripts are attached hereto as **Exhibit D** and **Exhibit E**, respectively. On September 19, 2018, O-I filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 3) **and never raised any issue of New Jersey law applying to Plaintiff's claims.** On September 21, 2018, Plaintiff filed an Amended Complaint (ECF No. 4). On September 21, 2018, this Court denied O-I's Motion to

Dismiss Plaintiff's Complaint in light of Plaintiff's filing of an Amended Complaint (ECF No. 5). On October 12, 2018, O-I filed the instant Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim under New Jersey law (ECF No. 7).

## ARGUMENT

As outlined in detail below, O-I's Motion should be denied because: 1) regardless of which state's substantive law applies, Plaintiff's Amended Complaint contains well-pleaded, nonconclusory factual allegations demonstrating that the claims have plausibility, permitting this Court to draw the reasonable inference that O-I is liable for the misconduct alleged; 2) based on the facts and law governing O-I's conduct in this case, O-I owed a legal duty to the Plaintiff; 3) Plaintiff's frequent, regular, and proximal exposure to O-I's asbestos products, materials and debris were substantial factors in causing his mesothelioma, which is ultimately a jury question; 4) choice of law analysis in this case results in a false conflict and the laws of either Pennsylvania or New Jersey can be relied on interchangeably, but even if there were a true conflict, New Jersey has no greater interest in the application of its laws than Pennsylvania does; and 5) in the alternative, if this Court thinks New Jersey law applies to Plaintiff's claims and Plaintiff's Amended Complaint does not state a claim under New Jersey law, Plaintiff should be given leave pursuant to Fed. R. Civ. P. 15(a)(2), which is freely given, to amend his Complaint to conform with New Jersey substantive law.

## I.   PLAINTIFF'S AMENDED COMPLAINT PLEADS SUFFICIENT, DETAILED FACTS TO STATE CLAIMS FOR RELIEF.

As an initial matter, a fair reading of Plaintiff's Amended Complaint demonstrates that Plaintiff pled in detail sufficient, factual background against O-I that allows this Court to draw the inference – if proven through record evidence during discovery – that O-I is liable for its alleged conduct.

In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal quotations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Many of O-I's arguments drift into Summary Judgment territory and are simply improper factual issues for this Court to resolve in deciding O-I's Motion to Dismiss; for example, O-I attaches a deed for a piece of property located on New Freedom Rd. in New Jersey in an attempt to prove that O-I did not own a dump site on New Freedom Rd. *See*, O-I's Motion to Dismiss, p. 6. O-I does not offer any evidence to demonstrate if the deed for this parcel of land has anything to do with the piece of property where the dump site was actually located on New Freedom Rd. where Plaintiff grew up. Further, even if O-I did not own this dump site, the testimony by the Plaintiff was that O-I was using its own trucks to dump asbestos-laden products, material and debris at this property. O-I could have leased the property, possessed it, controlled it, or just simply used it to dump at. Further, O-I tries to offer evidence that it stopped manufacturing asbestos-containing Kaylo in 1958, three years after Plaintiff's continuous exposure began in 1955. *Id.* at 5. These offers of proof, as a matter of law, must be disregarded by this Court for the purposes of deciding O-I's instant Motion to Dismiss. The issue before this Court is whether Plaintiff's Amended Complaint satisfies federal pleading requirements.

In *Twombly*, the United States Supreme Court utilized a "two-pronged approach," which it

later formalized in *Iqbal*. Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555 and 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 664. The court then assesses "the 'nub' of the plaintiff's complaint--the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. *Id.* at 680.

If left with well-pleaded, nonconclusory factual allegations, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556.

In this case, O-I fails to even cite to Plaintiff's Amended Complaint or engage in any analysis about which factual allegations, if any, are legal conclusions, and which, if any, are well-pleaded and nonconclusory. This is O-I's burden and it has not met it. Regardless of O-I's failure to engage in any meaningful analysis, as discussed below, Plaintiff will demonstrate that the factual allegations as pled in his Amended Complaint clearly state cognizable claims and allow this Court to draw the reasonable inference that O-I is liable for the conduct alleged.

II.   **O-I'S CHOICE OF LAW ARGUMENT RESULTS IN A FALSE CONFLICT AND PLAINTIFF'S AMENDED COMPLAINT ADEQUATELY PLEADS FACTS TO SUPPORT HIS CLAIMS UNDER EITHER PENNSYLVANIA OR NEW JERSEY LAW.**

O-I's Motion should be denied because it fails to carry O-I's burden in proving that Plaintiff's allegations as pled in his Amended Complaint are not plausible under Pennsylvania or New Jersey law. *See*, *generally*, *Liebman v. Prudential Fin., Inc.*, 2002 U.S. Dist. LEXIS 25045, *11-14. O-I's choice of law analysis for the purposes of its instant Motion argues, in total:

As a court sitting in diversity, this Court applies the forum state's choice of law rules. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The Plaintiff is a resident of New Jersey. Am. Compl. ¶ 12, 37. As to Owens-Illinois, all of the Plaintiff's alleged exposure to asbestos took place in New Jersey. *Id.* at ¶ 42. The Plaintiff also alleges that he was diagnosed with an asbestos-related disease in New Jersey. Id. at ¶ 13. Thus, New Jersey law applies to the Plaintiff's claims against Owens-Illinois. *Marks v. Redner's Warehouse Markets*, 136 A.3d 984, 989 (Pa. 2016) (stating that there is "a presumption in personal injury cases that favors the application of the law of the state where the injury occurred").

EFC No. 7, p. 3

First, this is not a choice of law legal analysis but really just a statement that O-I thinks New Jersey substantive law should apply to Plaintiff's claims against it. O-I's "analysis" fails to make any showing as to why, legally, New Jersey law should apply to the exclusion of Pennsylvania law. Second, O-I does not move to dismiss Plaintiff's Amended Complaint on grounds that it is improperly pled under Pennsylvania substantive law. Therefore, should this Court find that Pennsylvania law governs Plaintiff's Amended Complaint, it must deny O-I's Motion. Third, this case was brought in Pennsylvania, removed to a Pennsylvania court, there are thirty-three (33) years of asbestos exposure in Pennsylvania, and now O-I files the instant Motion claiming that New Jersey law should apply. If O-I thinks that there is "a presumption in personal injury cases that favors the application of the law of the state where the injury occurred," then why would Pennsylvania law not apply when Plaintiff was exposed to asbestos for a longer time period in Pennsylvania due to Defendant International Paper's conduct than he was in New Jersey due to O-I's conduct? O-I **never once mentions to this Court in its Motion** that there is another Defendant in this case and Plaintiff has allegations of asbestos exposure in Pennsylvania.

As a threshold matter, it is Plaintiff's position that no choice of law analysis should even begin at this pre-discovery stage of litigation, particularly given that Plaintiff has outstanding deposition notices and requests for production of documents to which O-I has not responded.

Courts can decline to conduct choice of law analyses when deciding motions to dismiss, instead delaying such decisions until after an opportunity for discovery. *See*, *e.g.*, *D'Agostino v. Johnson & Johnson, Inc.*, 115 N.J. 491, 497 (1989).

If this Court however is inclined to conduct any choice of law analysis, as outlined below a proper choice of law analysis requires initially that this Court apply Pennsylvania choice of law principles and then determine whether there is, in fact, a choice of law conflict between Pennsylvania and New Jersey substantive law on Plaintiff's claims as to O-I. Then, if there is a false conflict, the analysis ends and Pennsylvania and New Jersey law apply interchangeably to Plaintiff's claims, and O-I's Motion must be denied outright. If there is a conflict, this Court then determines whether the significant relationships of this case – Plaintiff's claims of asbestos exposure in Pennsylvania for thirty-three (33) years and Plaintiff's exposure in New Jersey for fifteen (15) years – lies in Pennsylvania or New Jersey. If the more significant contacts are Pennsylvania, then again O-I's Motion should be denied outright. If it is New Jersey, then the issue becomes whether Plaintiff's Amended Complaint still adequately pleads cognizable claims under New Jersey substantive law. If it does – which as outlined below Plaintiff believes it does – then O-I's Motion must be denied. If it does not, Plaintiff respectfully moves for leave to amend his Amended Complaint pursuant to Fed. R. Civ. P. 15, which is to be freely given, to comport with New Jersey substantive law.

### A)      There is a False Conflict between Pennsylvania Law and New Jersey Law.

For federal courts sitting in diversity, "the choice of law rules of the forum state [determine] which state law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988). Accordingly, this Court applies the choice of law rules of Pennsylvania.  Pennsylvania's choice of law analysis consists of two parts. First, the court looks to see whether a "false conflict" exists.

*LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)). "'False conflict' really means 'no conflict of laws.' If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 659 n. 20 (1985). "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law. In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey*, 932 F.2d at 187. By contrast, there is a true conflict when the governmental interests of *both* jurisdictions would be impaired if their law were not applied. If a true conflict exists, the court must determine which state has the greater interest in the application of its law. In this case, where a false conflict exists, the court need not decide the choice of law issue, and the court may rely interchangeably on the laws of both states. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).

###### 1)   Negligence

In Pennsylvania, the elements of negligence are duty, breach, causal connection between the breach and injury, and an injury. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). Breach is proven by conduct that deviates from the general standard of care expected under the circumstances. *Id.* In New Jersey, the elements of negligence are duty, breach, and an injury proximately caused by defendant's breach of that duty. *Weinberg v. Dinger*, 524 A.2d 366 (1987). Breach is determined by whether the defendant acted as a reasonably prudent person or company would to avoid causing the harm. *Id.* at 374. These elements are almost identical under either

Pennsylvania or New Jersey law; therefore, there is no conflict and Plaintiff's allegations in his Amended Complaint adequately plead a negligence claim against O-I. *See*, Exhibit C, pp. 7-8.

### 2) Environmental Exposure

Both Pennsylvania and New Jersey permit negligence claims where a defendant fails to use reasonable care and creates a dangerous condition by releasing or dumping toxic or harmful substances into the environment, resulting in personal injuries. *See*, *Redland Soccer Club v. Department of the Army*, 55 F.3d 827, 851 (3d Cir. 1995); *Friedman v. F.E. Myers Co.*, 706 F.Supp. 376, 378 (E.D. Pa. 1989); and *Stevenson v. Keene Corp.*, 603 A.2d 521, 527-28 (Superior Court of NJ 1992).

In a case brought against various defendants for dumping harmful wastes such as polychlorinated biphenyls, arsenic, cadmium, chloroform, and radium in a landfill, in denying summary judgment the Third Circuit held that a simple Pennsylvania negligence claim permits recovery to persons injured from exposure to toxic substances in the air:

> In order to establish a traditional tort claim for negligence under Pennsylvania law, the Elliotts must establish that the Army's failure to exercise reasonable care towards them and any breach of its duty exposed them to an elevated risk of foreseeable harm, which resulted in injury. *Mohler v. Jeke*, 407 Pa. Super. 478, 595 A.2d 1247 (Pa. Super. Ct. 1991). On this record, we think the question whether the Elliotts can successfully establish all these elements of their claim is a question of fact, not law. At this stage, we look only to see if the Elliotts have introduced enough evidence to create a genuine issue of material fact as to each of these elements, including causation, the only one still at issue. For the following reasons, we conclude they have. *Redland* at 851.

The court went on to discuss that in these types of cases, duty is all but a given and the real issue to be litigated is causation:

> a plaintiff must not only show exposure, but must prove that he was exposed beyond what would normally be encountered by a person in everyday life, so that the plaintiff's risk of being injured

from the exposure is greater, in some way, than the normal risks all
of us encounter in our everyday lives." *Id.* at 846.

In Pennsylvania, a defendant's negligent, reckless or intentional activities affecting air quality can constitute a public nuisance. A defendant's actions and omissions causing asbestos fibers to be dumped and released can constitute a public nuisance *per se* under Pennsylvania law. Specifically, Pennsylvania has adopted Section 821B of the Restatement (Second) of Torts, which defines nuisance as unreasonable interference with a right common to the general public health, safety comfort or convenience, which may or may have a continuing, permanent or long-lasting effect. *See*, *Machipongo Land & Coal Co. v. Dep't of Envtl. Prot.*, 799 A.2d 751 (2002). In *Barker v. Brown*, 340 A.2d 566 (Pa. Super. 1975), the Superior Court of the Commonwealth of Pennsylvania held it is for a jury to determine whether a defendant knew or should have known of the existence of an unreasonably dangerous defect related to property that could have been eliminated and not have extended beyond the property to cause harm to third parties.

In New Jersey, by statute the Legislature expressly defined "environmental tort action" as "a civil action seeking damages for personal injuries or death where the cause of the damages is the negligent manufacture, use, disposal, handling, storage or treatment of hazardous or toxic substances. *N.J.S.A.* 2A:15-5.3f(1). The legislative history has its roots in public nuisance law. The New Jersey Supreme Court held that such environmental tort actions are excluded from coverage under the New Jersey Product Liability Act and thus can stand alone as negligence claims. As the Superior Court of New Jersey explained: "exposure to asbestos caused by negligent manufacture, use, disposal, handling, storage and treatment with resulting injury is a tort . . . involving a hazardous and toxic substance." *Stevenson v. Keene Corp.*, 603 A.2d 521, 527-28 (Superior Court of NJ 1992). As that court held: "While the particular label applied to asbestos litigation may frequently be that of products liability, there can be no question but that the product itself and the

13

risks it poses to people when introduced into the environment are both toxic and hazardous." *Id.* at 527; *see also*, *Kenney v. Scientific, Inc., et al.*, 204 N.J. Super. 228, 248 (1985). In *Kenney*, the court noted that this exact type of fact pattern – toxic substance exposure and transporting and disposing of toxic substances – subjects a defendant to potential negligence, strict liability and punitive damages claims. *Id.* at 255 and 262. As the *Kenney* court noted: "the days of straitjacket pleadings are fortunately behind us. There is no need for us to be obsessed with labels, and to endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned. A new body of law is developing and will undoubtedly continue to evolve in the troublesome field of law relating to hazardous waste." *Id.* at 256.

Because both Pennsylvania and New Jersey permit negligence claims for the exact type of exposure Plaintiff pled factually and legally in his Amended Complaint – failure to exercise reasonable care in manufacturing, transporting, and discarding asbestos-containing products, materials, and debris and releasing asbestos fibers into the air where Plaintiff lived – Plaintiff's Amended Complaint adequately pleads environmental exposure claims against O-I. *See*, Exhibit C, pp. 7-8 and 10-11.

### 3)   Conspiracy

In Pennsylvania, the elements of a civil conspiracy claim are "two or more persons combined or agreed with intent to do an unlawful act or to do any otherwise lawful act by unlawful means." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). Likewise, in New Jersey, the elements of a civil conspiracy claim are the "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage." *Banco Popular North America v. Gandi*, 184 N.J. 161, 177 (2005).

These elements are almost identical under either Pennsylvania or New Jersey law; therefore, there is no conflict and Plaintiff's allegations in his Amended Complaint adequately plead a conspiracy claim against O-I. *See*, Exhibit C, pp. 8-9. Particularly given that O-I has not responded to Plaintiff's Notice of Fed. R. Civ. P. 30(b)(6) Deposition and Requests for Production of Documents and has provided no discovery of any kind in this case, Plaintiff's allegations of conspiracy will be developed during the course of discovery.

### 4)      Strict Liability

In Pennsylvania, pursuant to the Restatement (Second) of Torts §§ 402(A) and 402(B), Plaintiff can prove his design defect, manufacturing defect, and failure to warn claims by showing that O-I designed a defective product, manufactured and sold the defective product, and the product contained a condition that made it unsafe. Pursuant to *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), Plaintiff may prove either that O-I's products failed the consumer expectation test or that they failed the risk-utility test. Further, Plaintiff maintains a failure to warn claim, which permits the jury to find O-I's product defective if it was not accompanied by proper warnings and instructions. Specific to asbestos exposure, the Superior Court of the Commonwealth of Pennsylvania has held that in order to make a prima facie showing in an asbestos case, the evidence must establish that plaintiff(s) inhaled asbestos fibers and that the asbestos fibers were a byproduct of a specific asbestos manufacturer's product. *Eckenrod v. GAF Corp.,* 375 Pa. Super. 187, 190-191 (1988). Additionally, plaintiff(s) must also show that there was regular, frequent, and proximate exposure and inhalation of asbestos in order to establish a sufficient casual connection between the defendant's product and the asserted injury. *Gregg v. V-I Auto Parts Company,* 596 Pa. 274, 292 (2007).

In New Jersey, pursuant to the Product Liability Act, a plaintiff can prove that a product was not reasonably fit, suitable or safe for its intended purpose because it either contained a design defect or failed to contain adequate warnings or instructions. New Jersey permits plaintiffs to either prove risk-utility test or alternative design theory. *See*, *Lewis v. Am. Cyanamid Co.*, 155 N.J. 544 (1997). Further, with respect to disposal of a toxic substance, Plaintiff need only prove that O-I's disposal constituted an abnormally dangerous activity and that such activity harmed the Plaintiff. *See*, *T&E Industries v. Safety Light Corp.*, 587 A.2d 1249 (1991); New *Jersey Turnpike Authority v. PPG Industries, Inc.*, at al., 16 F.Supp.2d 460; De*partment of Environmental Protection v. Ventron*, 468 A.2d 150 (1983).

These burdens of proof are extremely similar under either Pennsylvania or New Jersey law; therefore, there is no conflict and Plaintiff's allegations in his Amended Complaint adequately plead strict liability claims for design and manufacturing defects and failure to warn against O-I. Even if New Jersey's product liability applied and not Pennsylvania's, Plaintiff's Amended Complaint adequately pleads a New Jersey strict liability claim. *See*, Exhibit C, pp. 9-10.

**5)   Punitive Damages**

In Pennsylvania, punitive damages are recoverable where there is evidence of negligent, intentional, willful, wanton or reckless conduct. Punitive damages are also recoverable in strict liability actions. *See*, *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 803 (Pa. 1989) and *Doe v. Wyo. Valley Health Care Sys.*, 987 A.2d 758, 768 (Pa. Super. 2009). In New Jersey, punitive damages are recoverable where plaintiff proves that harm suffered was the result of a defendant's acts or omissions actuated by wanton and willful disregard of persons who were harmed. This can be proven by any degree of negligence. N.J. Stat. Ann. § 2A:15-5.12. These standards are almost identical under either Pennsylvania or New Jersey law; therefore, there is no conflict and Plaintiff's

16

allegations in his Amended Complaint adequately plead claims for punitive damages, which are ultimately just a function of evidentiary proof obtained during this case and cannot be determined yet at this stage of litigation. *See*, Exhibit C, pp. 11-12.

> **B)** **Assuming, *Arguendo*, That a True Conflict Exists, New Jersey Has No Greater Interest in the Application of Its Laws Than Pennsylvania Does.**

Even if this Court thinks there is no false conflict and there is a true conflict, this Court next must determine which state has the greater interest in the application of its law. *LeJeune*, 85 F.3d at 1071. To make this determination, the court must look,

> to see what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interest underlying the particular issue before the court.' When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale." *Id.* at 1072 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 857 (Pa. 1970)).

In a tort case, the Pennsylvania analysis is essentially the same as that set forth in the Restatement (Second) of Conflict of Laws § 145 (1971). *See Troxel v. A.I. duPont Institute*, 636 A.2d 1179, 1180-81 (Pa. Super. 1994). The contacts to be considered include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and the place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

In this case, Plaintiff sued and pled detailed allegations against Defendant International Paper for Plaintiff's asbestos exposure that occurred continuously and exclusively over a thirty-three (33) year period in Philadelphia, Pennsylvania. *See*, Exhibit C.

Further, Pennsylvania's interest can be served without interfering with New Jersey's, or any other states', interest. As the Superior Court of the Commonwealth of Pennsylvania has held: the relevant inquiry is "the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law." *Troxel v. A.I. DuPont Inst.*, 636 A.2d 1179, 1180-81 (Pa. Super. 1994).

In this case, O-I has made no showing that New Jersey has any competing or exceeding interest in having its laws govern this case anymore than Pennsylvania does and as such has not carried its burden in its Motion to Dismiss. *See*, *generally*, *Lacey*, 932 F.2d at 188.

## III.   O-I OWED A DUTY OF CARE TO THE PLAINTIFF HARRY VERNON.

O-I argues in its Motion, beyond the scope of Fed. R. Civ. P. 12(b)(6), that even if Plaintiff's Amended Complaint is properly pled, it fails to state a claim under New Jersey law. The real basis of O-I's instant Motion is not choice of law, but rather, arguing that no matter what law applies, O-I did not owe Plaintiff Harry Vernon a legal duty. O-I argues it owed him no duty because O-I could not possibly have known of the dangers of asbestos exposure in the 1940s or 1950s. O-I further argues that it did not owe a duty because it thinks the Plaintiff's exposure could not have caused his mesothelioma, as it plainly writes without any citation: "No science – even today – supports that such ambient exposure is linked to disease." *See*, ECF No. 7, p. 7.

First, whether a defendant knew of certain dangers of asbestos exposure to a particular class of persons is truly a jury question. *See*, *Pecher v. Weyerhaeuser Co.*, 2016 U.S. Dist. LEXIS 28925 at 35 (W.D. Wis. 2016). As that court held, it:

> will not bar evidence of knowledge of asbestos generally pre-dating 1965, nor will it preclude the jury from considering claims which pre-date 1965. Defendant may, of course, argue that there was an insufficient basis for [it] to be aware of the risks of *non-*

> *occupational* asbestos exposure before 1965, or even later should the evidence support it, but it will be up to the jury to weigh all evidence and argument. *Id.*

But even if it were a gate-keeping function of this Court, Plaintiff's Amended Complaint pled and Plaintiff will prove during discovery that O-I did know of the harms of asbestos exposure to persons just like the Plaintiff and therefore owed him a duty. Second, O-I's characterization of Mr. Vernon's exposure to asbestos generated in the manufacture and disposal of Kaylo as "ambient" is misleading and not the crux of Plaintiff's allegations. Rather, the release of friable asbestos dust from the manufacturing and dumping processes led to elevated levels of asbestos within the air that Mr. Vernon was exposed to. It was these levels **above** ambient that played a role in the development of his mesothelioma. Such a claim, as it relates to environmental exposure, is well supported within the scientific community.

A)      **Plaintiff's Factual Allegations against O-I**

For the purposes of deciding this Motion, as pled in Plaintiff's Amended Complaint, Plaintiff will prove the following facts, which demonstrate that O-I owed Plaintiff a duty of care:

- O-I owed Plaintiff a duty of care.

- It was foreseeable to O-I that Plaintiff would be exposed to asbestos from O-I's premises, products, materials, and debris.

- O-I designed, manufactured, produced, supplied, sold, and/or distributed, asbestos-containing and asbestos-covered products and material at, among other places, a manufacturing facility located on Jackson Rd., Berlin, NJ 08009, from approximately 1955-1970. O-I owned, leased, operated, possessed and/or controlled the manufacturing facility located on Jackson Rd., Berlin, NJ 08009. One of the asbestos-containing products O-I designed, manufactured, produced, supplied, sold, and/or distributed was called Kaylo.

- O-I designed, manufactured, produced, supplied, sold and/or distributed asbestos-containing and asbestos-covered products,

material and debris to which Plaintiff was exposed. The products themselves were defective in design.

- O-I used trucks to carry, dump and/or discard asbestos-containing and asbestos-covered products, materials and/or debris from the manufacturing facility (and possibly from other facilities or sources) to a dump site located on New Freedom Rd. in Pine Hill, NJ ("dump site"). O-I owned, leased, operated, possessed and/or controlled the dump site. O-I owned, leased, operated, possessed and/or controlled the trucks that dumped asbestos-containing and asbestos-covered products, materials and/or debris at the dump site. The trucks were not covered and dust and fibers from the asbestos-containing and asbestos-covered products, materials and/or debris would emanate from the trucks.

- From approximately 1955-1970, Plaintiff resided at 125 Bramau Ave., Pine Hill, NJ 08009, which was close to the O-I manufacturing facility (5 miles away) and dump site (1 mile away).

- As a result of O-I's conduct, asbestos fibers were all over the road, surrounding areas and in the air at and around the location of the dump site As a result of O-I's conduct, asbestos fibers were in the air at and around the location of O-I's manufacturing facility. As a result of O-I's conduct, asbestos fibers were in the air at and around the location of Plaintiff's residence on Bramau Ave.

- Plaintiff was exposed to asbestos-containing dust and fibers that he inhaled and ingested, as a direct result of O-I's conduct, as he walked at, near, by, and/or on the dump site on a frequent basis. Plaintiff was exposed to asbestos-containing dust and fibers that he inhaled and ingested, as a direct result of O-I's conduct, as he lived his daily life on Bramau Ave.

- O-I failed to provide any protection or warnings to Plaintiff regarding asbestos exposure or the defectiveness of its products.

- O-I knew or should have known that its products, materials, debris and premises contained asbestos, would release asbestos dust and fibers into the atmosphere, and would expose persons like and including Plaintiff to respirable dust.

- O-I knew or should have known of the health hazards caused by the aforementioned asbestos fibers, dust, particles, and/or pollution being emitted into the air and knew or should have known that said dust, fibers, particles, and/or pollution were deleterious, poisonous, and highly harmful to Plaintiff and/or other people living near the

O-I manufacturing facility and dump site; yet O-I failed to provide adequate and sufficient protection or warnings.

- O-I knew or should have known that asbestos exposure can cause disease and death.

- As a direct, proximate, and substantial result of O-I's conduct, which increased Plaintiff's risk of harm, Plaintiff was exposed to, and came in contact with, asbestos and inhaled or ingested asbestos dust and fibers.

- As a direct, proximate, and substantial result of O-I's conduct, Plaintiff was diagnosed with mesothelioma.

*See*, Exhibit C.

Further, in support of Plaintiff's factual allegations, Plaintiff will prove the following, which demonstrate that O-I was armed with the relevant historical knowledge to owe Plaintiff a duty of care:

- O-I developed and manufactured Kaylo insulation beginning in the early 1940's with asbestos as a known ingredient;

- O-I never provided any warnings about the health hazards and dangers associated with Kaylo insulation and, in fact, marketed the product as non-toxic;

- In 1941 and 1942, asbestos was identified publicly by the Industrial Hygiene Foundation, of which O-I was a member, as a cancer and asbestosis causing agent;

- As early as 1943, in the early period of developing and manufacturing Kaylo, O-I recognized potential hazards to end users and therefore had Saranac Laboratories study Kaylo. Saranac advised that O-I **had "all the ingredients for a first class hazard."**

- By 1947, in protecting its own employees, O-I recognized, documented and took steps to make sure it complied with its own duty to prevent the spread of harmful dusts, fumes and mists from areas where they originated to places where others who did not work with these products could be exposed because of the dangers of non-occupational exposure.

- O-I's Safety Manual, published by O-I in 1947, identified asbestos

21

as a toxic substance and industrial health hazard that must be "rigidly controlled."

- The Industrial Hygiene Foundation of America, Inc. found there was no measurement "safe dustiness" for asbestos exposure.

- By 1948, O-I knew that exposure to Kaylo caused disease and was advised by an independent report that as the period of exposure increased, so did the accumulation of mineral matter within the lung.

- In 1952, the United States Department of Labor recognized the threat take-home exposure posed when it required any plant, factory, or surrounding area that manufactured materials, supplies, articles, or equipment as part of a public contract to provide workers exposed to harmful materials, including asbestos, be provided a facilities to prevent the harmful material from coming in contact with the workers' street clothes.

- O-I marketed Kaylo as "non-toxic."

**B)      O-I's Legal Duty Owed to the Plaintiff**

Pursuant to Pennsylvania and New Jersey law, O-I owed a legal duty to Plaintiff Harry Vernon. In Pennsylvania, the Supreme Court in *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000) noted five factors to be considered in determining whether a duty exists in a particular case. Those factors include: 1) the relationship between the parties; 2) the social utility of the actor's conduct; 3) the nature of the risk imposed and foreseeability of the harm incurred; 4) the consequences of imposing a duty upon the actor; and 5) the overall public interest in the proposed solution. *Althaus*, 756 A.2d at 1169. Similar, in New Jersey, the Supreme Court in *Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247 (2013) noted the factors to be considered in determining whether a duty exists. Those factors include: 1) relationship of the parties; 2) nature of the risk; 3) the opportunity and ability of a party to exercise care; 4) fairness; 5) common sense; and 6) public interest.

As legal support for O-I's proposition that it owed the Plaintiff no duty of care in this case under any theory of liability, O-I offers no case from Pennsylvania or New Jersey. Instead, O-I

22

cites cases involving other Defendants, such as Georgia Pacific, who were sued for allegations of asbestos exposure that occurred in places like Kentucky, Maryland, and Louisiana. Respectfully, those cases – with completely different facts and sources of exposure and different laws for duty analysis – have no import on this Court's legal duty analysis.

As outlined herein, Pennsylvania and New Jersey law recognize legal duties owed for causes of action sounding in negligence, product liability, and environmental tort law – as pled in Plaintiff's Amended Complaint – for the exact type of exposure alleged by Plaintiff. O-I's defense that it could not owe a duty for conduct in the 1940s, 1950s, or 1960s because it could not have known of the dangers of asbestos exposure to, among other types of persons, non-asbestos workers, has been rejected as a matter of law. Further, in the area of environmental law, as the Supreme Court of New Jersey aptly reasoned in rejecting a similar argument by a company processing radium that claimed it did not know of the health hazards associated with radium exposure to the public:

> Here defendant knew that it was processing radium, a substance concededly fraught with hazardous potential. It knew that its employees who handled radium should wear protective clothing; it knew that some employees who had ingested radium had developed cancer; and prior to the sale of the property, it knew that the inhalation of radon could cause lung cancer. Despite that wealth of knowledge concerning the harmful effects of radium exposure, defendant contends that it could not have known that disposal of the radium-saturated by-products behind the plant would produce a hazard. **That contention appears to rest on the idea that somehow the radium's potential for harm miraculously disappeared once the material had been deposited in a vacant corner of an urban lot, or at the least that one might reasonably reach that conclusion—a proposition that we do not accept. Surely someone engaged in a business as riddled with hazards as defendant's demonstrably was should realize the potential for harm in every aspect of that dangerous business.** If knowledge be a requirement, defendant knew enough about the abnormally-dangerous character of radium processing to be charged with knowledge of the dangers of disposal.

*T&E Industries v. Safety Light Corp.*, 587 A.2d 1249, 1261 (1991) (emphasis added).

New Jersey has a long history of allowing causes of action to proceed, both in negligence and strict liability for harms caused by the contamination from landfills. For example, in *Ayers v. Twp. Of Jackson,* 106 N.J. 557 (1987), the New Jersey Supreme Court affirmed, in part, damages awarded to various Plaintiffs for injuries sustained due to water contamination from a municipal landfill.

Another New Jersey case, *Kenney v. Scientific, Inc., et al.*, 204 N.J.Super 228 (Law Div. 1985), included claims against both the owner/operator of the landfill, as well as the entities which generated the waste and those who hauled it. In almost the exact circumstances on point with the present matter, the trial Court held that causes of action as to the private waste generators could proceed under the theory of strict liability. *See Kenney, supra,* at 246-53. While the claims for negligence and nuisance were dismissed via summary judgment, they were nevertheless recognized and considered as viable theories of liability as to the private waste generators. Likewise, the New Jersey court held that the haulers of the toxic materials could be found liable on a theory of negligence based upon the manner of delivery of materials they knew or should have known were dangerous. *See id.* at 260-63.

The holding of the Court in *Kenney* was subsequently cited, along with a history of New Jersey environmental law*,* by the New Jersey District Court in *Interfaith Community Organization v. Honeywell Int'l et al.*, 263 F.Supp.2d 796 (2003). The District Court made clear that liability could be imposed against those entities who take an active role in the management or disposal of toxic substances at the site in question. *See id.* at 846. Likewise, the Court cited to *Kenney* in making clear that a hauler could also be held strictly liable. *See id.* at 855 fn.13.

The viability of such claims for which relief may be granted is also found in numerous cases where insurance coverage for such claims is at issue under the "continuous trigger theory."

24

*See e.g., Owens-Illinois v. United Insurance Co.,* 650 A.2d 974 (1994); *see also Williams v. Port Authority of New York and New Jersey*, 786 A.2d 114 (App. Div. 2001)(continuous trigger theory applied for personal injury due to environmental contamination); *Gottlieb v. Newark Ins. Co.,* 570 A.2d 443 (App. Div 1990) (continuous trigger reflects the law in New Jersey, allowing plaintiffs to seek recovery for chemical poisoning claims).

As is made clear from this long line of cases, even if New Jersey law is to be applied, Plaintiff has clearly and sufficiently pled recognized causes of action against O-I as the generator of the toxic materials as well as the hauler of same. Not only are these recognized causes of action, but the application of strict liability and negligence as to O-I is clearly the appropriate standard. Further, as to Plaintiff's strict liability claim, O-I's knowledge of the hazard is moot.

### 1) *Olivo* and *Farrar* Decisions

Specifically with respect to asbestos, there are numerous courts that have found duties owed against defendants for exposing non-workers to asbestos. In *Olivo v. Owens-Illinois, Inc.*, the New Jersey Supreme Court held that Exxon Mobil should have foreseen the risk of take-home asbestos exposure to its employees' family members as early as the 1940s, as a matter of law. 895 A.2d 1143, 1146 (N.J. 2006). The plaintiff, Anthony Olivo, worked as a steamfitter/welder from 1947 until 1984. *Id.* His wife, Eleanor Olivo, was diagnosed with mesothelioma and died shortly after her diagnosis. *Id.* Anthony brought a survival and wrongful death action against, among others, Exxon Mobil. Exxon argued that it did not owe a duty to its employee's spouse. *Id.*

The court held that "[i]t requires no leap of imagination to presume that during the decades of the 1940's, 50's, 60's, and early 1980's when Anthony worked as a welder and steamfitter either he or his spouse would be handling his clothes in the normal and expected process of laundering them so that the garments could be worn to work again." *Id.* at 1149. Accordingly, "Exxon Mobil

should have foreseen that whoever performed that task would come into contact with the asbestos that infiltrated Anthony's clothing." *Id.* Therefore, "Exxon Mobil owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on contaminated clothing." *Id.*

The Illinois Appellate Court relied on *Olivo* in *Simpkins v. CSX Corporation* where it reversed the trial court's dismissal of the plaintiff's complaint, and held that take-home asbestos exposure was foreseeable before 1965. *Olivo*, 929 N.E.2d 1257 (Ill. App. Ct. 2010). The plaintiff alleged that she was exposed to asbestos that her husband brought home from work between 1958 and 1964. *Id.* at 1111. The defendant, B&O Railroad, argued that the risk of take-home exposure was not foreseeable before 1972. *Id.* at 1116.

In overturning the trial court's dismissal of the complaint, the appellate court explained that "[t]he question, however, is not whether the employer actually foresaw the risk to Annette Simpkins; rather, the question is whether, through reasonable care, it **should have foreseen** the risk." *Id.* at 1116 (emphasis added).

Given the facts of this case, Plaintiff was a foreseeable plaintiff and extending a legal duty to O-I for his asbestos exposure satisfies *Althaus v. Cohen* and *Estate of Desir ex rel. Estiverne v. Vertus*. As was held in *Schwartz v. Accuratus Corp.*, 267 F.Supp. 3d 632 (E.D. Pa. 2017), in citing to *Olivo*, in this case involving the Plaintiff there are sufficient facts sufficient to generate a duty. *See*, *Schwartz* at 638. The only portion of any duty analysis that O-I raises in its Motion is that the health risk posed to Plaintiff was not foreseeable. As alleged in Plaintiff's Amended Complaint and as will be proven during discovery, O-I was well aware, or at the very least should have been, of the health risks its asbestos-containing products and conduct posed to Plaintiff. Further,

extending a duty to O-I in this case does not offend any of the *Althaus* factors and promotes Pennsylvania's interest in protecting its residents.

**a)**     **The Holding in *Farrar* Does Not Apply to this Case.**

After having argued that New Jersey law should apply, O-I inexplicably fails to rely upon a single New Jersey case, despite the plethora of available precedent on the subject of personal injury from environmental exposure. Instead, O-I cherry picks a single favorable ruling from Maryland which had a limited record and relied upon Maryland law, which has absolutely no relevance or connection to the present case. As such, O-I's reliance on *Farrar* is misplaced and should not be considered by the Court – especially when New Jersey law dictates that negligence and strict liability, at the very least, are the proper standards, and O-I's state of the art knowledge is irrelevant to Plaintiff's strict liability claim.

O-I relies on the Maryland Court of Appeals holding in *Georgia Pacific, LLC v. Farrar*, 69 A.3d 1028 (Md. 2013) to support the purported proposition that take-home exposure to asbestos – in every single case against every manufacturer of an asbestos-containing product no matter when the product was made prior to 1965 – can never, as a matter of law, be foreseeable. Generally, that proposition is legally and factually baseless and not supported in reality by the *Farrar* holdings. Specifically, in this case, that proposition will be simply unsupported by the record evidence as discovery unfolds. Plaintiff will establish that exposure to asbestos in a non-occupational setting and the fact that such exposure could cause disease was foreseeable to O-I prior to 1965, in the 1940s-1960s – record evidence that was simply not before the *Farrar* court because that court was not assessing the knowledge of O-I.

Specifically, the *Farrar* court was left to base its decision solely on one published study from the 1960's with respect to that case's defendant Georgia-Pacific, LLC. The Court did not

27

have the benefit of, and as such was unable to consider, the knowledge of the individual defendant as it pertained to its own employees.  Nor was the state of the art, as it pertains to industrial hygiene principles going back to the early 1900's, presented to the court as it will be here. Lastly, O-I's knowledge was not an issue in that lawsuit, Georgia-Pacific's was. The case simply has no relevance to this case.

In fact, in the lower appellate court's decision in *Farrar*, the Court of Special Appeals of Maryland noted the Maryland Court of Appeals holding in *Dixon v. Ford*. 47 A.3d 1038 (Ct. of Special Appeals of MD 2012), in which plaintiff-decedent was allegedly exposed to defendants' asbestos-containing products from the 1950s-1970s. *Georgia-Pacific v. Farrar*, 53 A.3d 424, 558 (2012). In remanding the case for a new trial because some portions of plaintiff's causation expert's testimony should have been precluded while others should have been admitted, the *Dixon* Court permitted a plaintiff alleging asbestos exposure as far back as the 1950s to proceed with a jury trial. The Special Appeals Court of Maryland in *Farrar* noted why every asbestos case cannot be treated the same with respect to duty and causation: in *Dixon*, a different factual record was before the Court and the jury than that before the Court in *Farrar*. *Georgia-Pacific v. Farrar*, 53 A.3d 424, 558 (2012).

Additionally, *Farrar* is a far more limited holding than O-I asserts. In *Sherin v. John Crane-Houdaille, Inc.*, 47 F. Supp. 3d 280 (D. Md. 2014), the defendant argued, just as O-I argues here, that it did not owe the plaintiff a duty to warn her about asbestos exposure because she was not foreseeable.  *Sherin*, 47 F. Supp. 3d at 297.  The Court found that the plaintiff "presented sufficient evidence from which a jury could reasonably infer that the Union Carbide Corporation knew or had reason to know of the dangers of household exposure to asbestos." *Id.* at 297.  The Court based its holding on the finding that a jury could reasonably infer that Union Carbide "knew

or had reason to know of the dangers of household exposure to asbestos before 1972." *Id.* at 297. In determining that take-home exposure was foreseeable, the Court relied on three expert reports, two of which were pre-1960 – a 1947 Dust Investigation Report and a 1956 journal article by Henry Field Smith, Jr., Ph.D. *Id.* at 297. Consequently, the *Sherin* Court denied the defendant's motion for summary judgment. *Id.*

Rather than looking out of state, this Honorable Court need only look at its own position on the issue; specifically, that Plaintiff's foreseeability is not alone determinative to establish a duty. *See Gillen v. Boeing Co.*, 40 F. Supp. 3d 534, 540 (E.D. Pa. 2014). Therefore, just as the *Sherin* Court found to be the law in Maryland, foreseeability is not the sole factor to establish a duty in Pennsylvania. *Id.* Consequently, even if Plaintiff's foreseeability of harm is unclear – which it is not – foreseeability alone is not enough to extinguish O-I's duty to him.

**IV.    PLAINTIFF'S FREQUENT, REGULAR, AND PROXIMAL EXPOSURE TO O-I'S ASBESTOS WAS A CAUSE OF HIS MESOTHELIOMA.**

The crux of O-I's Motion is that it did not owe a duty to Plaintiff because, as it plainly writes with no citation: "No science – even today – supports that such ambient exposure is linked to disease." ECF No. 7, p. 7. O-I is simply wrong. First, Plaintiff does not allege "ambient" exposure caused Mr. Vernon's disease. Rather, as pled, the actions of O-I in the manufacture, transport and dumping of its Kaylo product and debris elevated the dust levels above ambient, thereby contributing to Mr. Vernon's disease. Such raised levels due to manufacturing involving asbestos have been documented. *See*, Berry, Michael, *et al.*, "Mesothelioma Incidence and Community Asbestos Exposure," *New Jersey Department of Health Environmental Health Services* (August 1995), attached as **Exhibit F**. Likewise, governmental authorities such as OSHA and the EPA have made clear that there are no "safe" levels of asbestos exposure. O-I's causation

defense, without any evidentiary support and offered in a Motion to Dismiss, is both untrue and improper at this stage of litigation.

At the appropriate time during discovery and in addition to Exhibit F herein, Plaintiff will provide reliable and authoritative scientific studies and expert opinions, over decades, that have proven definitively that among people who live in areas with asbestos manufacturing plants – let alone a dump site for discarded asbestos-containing waste – these non-occupational, environmental exposures pose significant, elevated risks and are substantial factors in the incidence of mesothelioma as compared to average location incident rates. Further, Plaintiff will prove that for him, his frequent, regular and proximal asbestos exposure from a variety of different sources and conduct by O-I – not some "single occasion" –  did, in fact, cause Plaintiff's mesothelioma. Plaintiff was exposed over years on an almost daily basis due to O-I's conduct, and O-I's citing to cases involving brief or "single occasion" asbestos encounters are inapplicable to the Plaintiff's breadth of exposure in this case. *See*, ECF No. 7, p. 7.

It is well settled law that the defendant's conduct must be shown to be the proximate cause of plaintiff's injuries. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978) (citing *Flickinger Estate v. Ritsky*, 305 A.2d 40 (PA. 1973)).  "Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a **substantial factor** in bringing about the harm inflicted upon a plaintiff.   Pennsylvania law has long recognized that this substantial factor **need not be … the only factor** …."  *Powell v. Drumheller*, 653 A.2d 619, 622 (Pa. 1995) (quoting *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923 (Pa. 1981)) (emphasis suppled). Whether the plaintiff has satisfied the causation element is a "normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue." *Hamil*, 392 A.2d at 1284-85 (citing *Topelski v.*

*Universal South Side Autos, Inc.*, 180 A.2d 414 (Pa. 1962)). In this case and at this pre-discovery

stage of litigation, O-I's causation defense – offered with no evidentiary or expert support – should

be disregarded by this Court as it is a jury question.

But to the extent this Court considers the argument, under either Pennsylvania law

(*Eckenrod v. GAF, Corp.*, 544 A.2d 50 (1988) and *Gregg v. V.J. Auto Parts Company*, 943 A.2d

216, 227 (Pa. 2007)) or New Jersey law (*Kurak v. A.P. Green Refactories Co.*, 702 a.2D 349

(1997)), Plaintiff has properly pled and will prove his frequent, regular and proximate exposure to

asbestos from O-I's products, manufacturing facility, dump trucks, and dump site and will offer

medical and scientific proof of a nexus between that exposure and Plaintiff's mesothelioma.

## V.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND HIS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)(2).

If this Court thinks that Plaintiff somehow has not pled facts sufficient to give rise to a

cognizable claim under either Pennsylvania or New Jersey law as to Defendant O-I, Plaintiff

respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15 to plead Plaintiff's claims to

conform to New Jersey law. Fed. R. Civ. P. 15(a)(2) states that a "party may amend its pleading

only with the opposing party's written consent or the court's leave. The court should freely give

leave when justice so requires."

Even after a responsive pleading has been filed, courts are to act liberally in allowing

amendment of a pleading, particularly when an amendment will further the ends of justice,

effectuate presentation of a suit's merits and not prejudice the opposing party. *See*, *Hirshhorn v.*

*Mine Safety Appliances Co.*, 101 F. Supp. 549, 552 (W.D. Pa. 1951), aff'd, 193 F.2d 489 (3d Cir.

1952). In fact, "**the Federal Rules reject the approach that pleading is a game of skill** in which

one misstep by counsel may be decisive to the outcome and accept the principle that the purpose

of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48

(1957) (emphasis added).

In this case, in the event this Court is inclined to think New Jersey law applies to Plaintiff's Amended Complaint and the allegations have not been properly pled, Plaintiff respectfully requests leave to amend his Complaint to plead substantive allegations pursuant to New Jersey law. To deny Plaintiff that right would be to validate the exact type of "game of skill" that Third Circuit jurisprudence disavows. This should not be a guessing game of which state's law applies to multiple claims against multiple parties for conduct and exposure occurring in multiple states.

Accordingly, it is not only within the power, but it is a duty, of a federal court to consider on the merits a proposed amendment of a defective allegation once the court's attention is called to the defect. *See*, *Howard v. De Cordova*, 177 U.S. 609, 614 (1900). "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because none of those circumstances apply here, Plaintiff should be given leave to amend his Complaint if New Jersey law is found to apply.

## <u>CONCLUSION</u>

In view of the totality of the allegations in Plaintiff's Amended Complaint and case law governing his claims, O-I's Motion to Dismiss Plaintiff's Amended Complaint must be denied.

Respectfully submitted,

COHEN, PLACITELLA, AND ROTH, P.C.

Attorneys for Plaintiffs

By:<u>*/s/ Jonathan D. Rubinstein*</u>
Jonathan D. Rubinstein, Esquire
Email: jrubinstein@cprlaw.com
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-567-3500

Date: October 25, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan D. Rubinstein, attorney for Plaintiff, hereby certify that a true and correct copy of the foregoing Plaintiff's Response and Memorandum of Law in Opposition to Defendant Owens-Illinois, Inc.'s Motion to Dismiss, and Exhibits, were filed electronically via the Court's ECF system on the date below, which will automatically send email notification of such filing to all counsel of record.

COHEN, PLACITELLA & ROTH, P.C.

By: */s/ Jonathan D. Rubinstein*
Jonathan D. Rubinstein, Esquire

Dated: October 25, 2018