UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARRY VERNON, :
:
      Plaintiff, :
:
vs. : No. 2:18-CV-03902-ER
:
INTERNATIONAL PAPER :
COMPANY, et al., :
:
      Defendants. :

## ORDER

**AND NOW**, on this _____ day of _____, 2019, upon consideration of the Motion of Defendant Owens-Illinois, Inc. Seeking Leave to File a Reply Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint, it is hereby **ORDERED** that said Motion is **GRANTED** and Defendant Owens-Illinois, Inc. is granted leave to file the attached Reply Brief within five (5) days from the date of this Order.

BY THE COURT:

_____
Eduardo C. Robreno, J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY VERNON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | No. 2:18-CV-03902-ER |
| | : | |
| INTERNATIONAL PAPER COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

**MOTION OF DEFENDANT OWENS-ILLINOIS, INC. SEEKING LEAVE TO FILE A REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant Owens-Illinois, Inc. ("O-I"), by its undersigned attorneys, hereby seeks leave of Court to file a Reply Brief in connection with its Motion to Dismiss Plaintiff's Second Amended Complaint [No. 28] and in support thereof avers the following:

1. On August 15, 2019, O-I filed a Motion to Dismiss Plaintiff's Second Amended Complaint [No. 28].

2. On August 29, 2019, Plaintiff filed an Opposition to O-I's Motion [No. 32].

3. O-I seeks permission to file the reply brief attached hereto as Exhibit "A."

4. It is critical that the issues and arguments related to O-I's Motion, including those raised by Plaintiff in the Opposition, be fully briefed such that this Court will have before it all facts and arguments necessary to render a decision.

**WHEREFORE**, O-I respectfully requests leave to file the attached Reply Brief in support of its Motion for Summary Judgment.

                                                                 Respectfully submitted,

                                                                 **MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

                                                   By:    /s/ Chad D. Mountain
                                                                      Chad D. Mountain, Esquire

Date: September 5, 2019                            Attorney I.D. No. 86908
                                                                       1717 Arch Street
                                                                       Suite 3710
                                                                       Philadelphia, PA  19103
                                                                       cmountain@maronmarvel.com

                                                                       Counsel for Defendant Owens-Illinois, Inc.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARRY VERNON, :
 :
        Plaintiff, :
 :
vs. : No. 2:18-CV-03902-ER
 :
INTERNATIONAL PAPER :
COMPANY, et al., :
 :
        Defendants. :

**DEFENDANT OWENS-ILLINOIS, INC.'S
REPLY IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)
FOR FAILURE TO STATE A CLAIM**

Riddled with demonstrably false factual misrepresentations and citations to irrelevant authorities, Plaintiff's Second Amended Complaint ("SAC") fails to plead a plausible claim that Owens-Illinois ("O-I") owed a negligence duty to an individual like Mr. Vernon, who never used an O-I product, worked at a facility operated and controlled by O-I, or was a member of the household of another individual so employed. No relationship existed between Mr. Vernon and O-I at all, let alone one upon which a duty can be recognized.

As the limitations expressed in *Olivo* and its progeny attest, New Jersey has never imposed a negligence duty in these circumstances. To do so where, as here, the alleged exposures took place in the 1950s would ignore the basic tenets of New Jersey law because, as courts around the country have held, no scientific authority anywhere

in the world reported asbestos disease from such non-occupational exposure before the 1960s – a fact that the plaintiff does not dispute in his responsive brief.

## I. Plaintiff's Misrepresentations of the Fact Are Not Well-Pleaded and Are Entitled to No Weight.

As demonstrated in our opening brief, it is demonstrably false to claim that Owens-Illinois ("O-I") made asbestos products at the Berlin, New Jersey plant "from approximately 1955-1970." SAC at ¶ 37. It is indisputable, and the cases cited in our opening brief have repeatedly recognized, that O-I sold the plant in 1958. That also means, of course, that any claim that O-I discarded waste from the plant at a local dump similarly ended in 1958.

The plaintiff's improper attempt to expand the period relevant to the foreseeability analysis beyond 1958 is no accident. His brief cites no published study prior to the 1960s that reported asbestos disease from non-occupational exposure to asbestos for the simple reason that no such study exists—again, a fact repeatedly recognized in the decisions from courts across the country cited in our opening brief.

The plaintiff's mischaracterizations of four articles published prior to 1958 cannot change their actual content. Pl. Br. at 14 (citing Hueper, W.C., "A Methodology for Environmental and Occupational Cancer Surveys," Public Health Technical Monograph No. 1, Public Health Service (1950); Hueper, W.C., "Editorial: Silicosis, Asbestosis, and Cancer of the Lung," American Journal of Clinical Pathology, 25 (December 1955), 1388-1389; Hueper, W.C., "Environmental Cancer Hazards Caused by Industrial Air Pollution," Archives of Industrial Hygiene and Occupational Medicine, 2 (1950), 325-

2

328; and Conklin, Groff, "Cancer and Environment," Scientific American, 180 (January 1949), 11-15). None of those articles reports asbestos disease from non-occupational exposure to asbestos, let alone an asbestos disease risk from living five miles from a manufacturing plant or merely walking by a dump site. One of the articles (Hueper, 1950) actually lists purported non-occupational carcinogens, and asbestos is NOT on that list. It is ridiculous to suggest that such articles "prove definitively that among people who live in areas with asbestos manufacturing plants [have] significant, elevated risks and are substantial factors in the incidence of mesothelioma and cancer as compared to average location incidence rates." Pl. Br at 23. Factually unfounded arguments do not constitute well-pleaded facts.

In an attempt to make his claimed exposure from the O-I manufacturing plant in the 1950s sound plausible, the plaintiff falsely states in his responsive brief that Mr. Vernon "lived, walked and traveled by the manufacturing facility." Pl. Br. at 2, 7, 9. The plaintiff provides no citation to support this claim because there is none. In fact, Mr. Vernon expressly denied doing so in his deposition: Q. [Y]ou never went there, correct? A. No. No." (Dep. at 62.)

The claim in the responsive brief that Mr. Vernon was exposed to "visible, white asbestos-containing dust and fibers on New Freedom Road adjacent to the dump site" (P. Br. at 8) is also belied by the plaintiff's frank admissions that he was never exposed to visible dust as he walked by the dump owned and operated by someone other than O-I:

3

> Q. [W]hen you were walking by the dump in the '50s, do you ever recall breathing any dust?
>
> A. No.
>
> ...
>
> Q. Did you ever see dust fly up at that area?
>
> A. No.

(Dep. at 85, 87.)

In response to O-I's public record evidence that it was not the owner of the dump in question, the plaintiff simply argues that it "could have" leased the property or operated the dump. Pl. Br at 17. This type of raw speculation, without any evidence of reasonable inquiry to support the speculation, does not satisfy FRCP 11 – particularly where, as here, there is hard evidence that the allegation that O-I owned the dump is untrue. Absent some well-pleaded allegation comporting with FRCP 11, there is no factual basis for concluding that O-I exercised the requisite control over the dump to support the imposition of a negligence duty.

The cases are legion holding that a court is not bound to credit demonstrably false allegations in a complaint. *See, e.g., Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations must be "not self-evidently false"); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n. 2 (3d Cir.1994) (a court may consider matters of public record and other matters of which a court may take judicial notice under 12b(6) without converting to a motion to dismiss under summary judgment); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994) (same); *Sprewell v. Golden State Warriors*, 266 F.3d

979, 988 (9th Cir.2001) (In ruling on a motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice...."), , *opinion amended on denial of reh'g by*, 275 F.3d 1187 (9th Cir.2001); *Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 158, 160 n. 3 (Fed. Cl. 2000) ("Contrary to plaintiff's claim, it is well-established that a court need not accept as true allegations contained in a complaint that are contradicted by matters on which the court may take judicial notice ...."), *aff'd*, 271 F.3d 1327 (Fed. Cir. 2001).

Stripped of the hyperbolic assertions and demonstrably false mischaracterizations in the plaintiff's responsive brief, this negligence case remains one based on purported asbestos exposure in the 1950s from living five miles from O-I's manufacturing plant (Count IV) and from merely walking past a dump site owned and operated by someone other than O-I (Count V). None of the articles published before 1958 says anything at all about the likely exposure levels from incidental, idiosyncratic asbestos exposures like those alleged here, let alone declares that such exposures cause asbestos disease. To state otherwise is gross mischaracterization. Articles after the 1950s concerning the potential causal role of such exposures are irrelevant to the foreseeability analysis in this case.

## II. Plaintiff's Legal Authorities Do Not Address the Negligence Duty Issue Framed Here.

Plaintiff fails to cite a single case, from New Jersey or anywhere else, that imposes a negligence duty on a defendant for non-occupational exposure to asbestos outside the household contacts of an individual occupationally exposed to asbestos on

5

premises owned and operated by the defendant. Nor does the plaintiff cite a single case from any court, anywhere, imposing such a negligence duty for non-occupational, non-household asbestos exposure solely during the time period at issue here, which indisputably ended in 1958.

Instead, the plaintiff cites *Stevenson v. Keen Corp.*, 603 A.2d 521 (N.J. App. Div. 1992, aff'd 620 A.2d 1047 (N.J. 1993). *Stevenson*, however, nowhere addressed the question of legal duty. Rather it addressed whether the several liability provisions of the Comparative Negligence Act apply to asbestos litigation under the exception for "environmental tort actions." *Id.* That issue is not raised by, and is irrelevant to, the instant motion to dismiss.

*Kenny v. Scientific, Inc.*, 497 A.2d 1310 (N.J. 1985), nowhere addressed the legal duty question raised here. Rather, it considered summary judgment concerning "the question whether some of the haulers [of waste] were negligent in the choice of the landfill which they knew or should reasonably have known to be dangerous." *Id.* at 1328. The legal duty issue framed here simply was not raised in that case, and the plaintiff here has never claimed that O-I negligently selected the New Freedom Road dump site. The language plaintiff quoted by plaintiff regarding "straightjacket pleadings" appears in a section of the opinion addressing "trespass and battery,' *id.* at 256, claims that also are not raised in the SAC.

*Interfaith Community Organization v. Honeywell Int'l, et al.*, 263 F. Supp. 2d 796 (2003) is even further afield. The case did not involve a personal injury claim at all. Rather, it involved statutory claims for remediation costs under the Resource

6

Conservation and Recovery Act, CERCLA, and the New Jersey Spill Act. *Id.* at 804–805. The case was tried to the Court, not a jury, and the Court's findings centered on whether there was "abnormally dangerous activity" justifying strict liability. There is no discussion of the common law negligence duty question framed here.

*Ayers v. Jackson Township*, 525 A.2d 287 (N.J. 1987) was a nuisance action against a public entity and centers on the question whether damages were available for future medical monitoring costs and the increased risk of developing cancer: "The legal issue we must resolve ... is whether the proof of an unquantified enhanced risk of illness or a need for medical surveillance is sufficient to justify compensation under the Tort Claims Act." *Id.* at 302. Nowhere does the Court address the negligence duty issue framed here, let alone the factors identified in the negligence duty jurisprudence of New Jersey.

To suggest, as the plaintiff does at page 25 of his brief, that *Hopkins v. Fox & Lazlo Realtors*, 132 N.J. 426 (1993) supports his negligence claim against O-I stretches credulity to the breaking point. *Hopkins* has nothing to do with an alleged exposure to asbestos, or any sort of harmful substance. It is a slip and fall case against a real estate agent. It is a classic case of a business invitee stumbling, allegedly because of a lack of guidance from the party who invited him there. Obviously, O-I is not alleged to have this or any other relationship with Mr. Vernon.

The only cases discussed in the plaintiff's response that are relevant to the issues raised in O-I's motion are *Olivo* and its progeny. These are negligence duty cases, but their holdings are limited by their facts. They involved direct occupational exposures

7

that were allegedly transmitted to household members of those employed by the defendants or who worked on the defendant's premises.

Mr. Vernon's claim involves none of those facts. There is no direct occupational exposure here and no claim of derivative household exposure arising from someone else's occupational exposure. Mr. Vernon had no relationship whatsoever with O-I. He never worked at, or even visited, O-I's Berlin plant. O-I never owned the dump he allegedly walked by.

As pointed out in our opening brief, the *Olivo* line of cases expressly warns against extending their analysis beyond the context of derivative household exposures. *E.g.*, *Schwartz v. Accuratus Corp.*, 225 N.J. 517, 528 (2016) (finding "no precedent" for extending the legal duty for asbestos exposure "outside of a factual setting involving household members, presumably because of the idiosyncratic nature of most other interactions with a take-home toxin"; "chance contact with a worker transporting home a toxic substance from another's premises should not suffice to create a duty of care").

The reason for this limitation is clear. Going further would impose a retroactive negligence duty concerning an unlimited, unpredictable class of plaintiffs. No matter how remote the alleged contact, no matter how tenuous the alleged link to O-I, *any* person who later in life developed an asbestos disease – even when he or she had occupational exposure to asbestos wholly unrelated to O-I – could allege the breach of a legal duty O-I simply because he or she at some point lived in Berlin, New Jersey.

The plaintiff nowhere acknowledges the limitations expressed in *Olivo* and *Schartz*. He never explains how the idiosyncratic exposures alleged here could possibly

8

fit within the occupational/household exposure fact patterns in the controlling New Jersey case law. Nor does he explain how cases involving exposures that extended decades after O-I sold its Berlin plant in 1958 could properly frame the foreseeability question here.

### III. The SAC Fails to Establish a Foreseeable Risk, a Relationship Between the Plaintiff and O-I, or a Feasible Manner in Which to Discharge the Alleged Negligence Duty in the 1950s.

Plaintiff does not dispute, because he cannot, that no one in the world reported asbestos disease even from household exposures derivative of occupational exposures until the 1960s. He cites nothing from the 1950's published literature reporting asbestos disease from living in the same city as a manufacturing plant or walking past a dump in which manufacturing waste allegedly was deposited. Articles *after* the 1950s about potential causal relationships between "low dose" environmental exposure to asbestos and disease are barred from consideration by New Jersey's rule against using hindsight in a foreseeability analysis. *See Schwartz*, 225 N.J. at 529.

Nor is it sufficient for plaintiff to recite a litany of allegations about O-I's supposed knowledge of the hazards of *occupational* asbestos exposure to asbestos during the 1950s. Pl Br. at 5-7. An allegation that O-I authorized animal tests regarding Kaylo dust at massive exposure levels many times greater than the then-prevailing occupational safety standards proves nothing about disease risks from Mr. Vernon's alleged "walk-by" non-occupational exposures miles from O-I's manufacturing plant. Nor do efforts by O-I to protect workers inside its plant from occupational exposures.

9

Plaintiff nowhere explains his relationship with O-I that he claims justifies the imposition of a legal duty in negligence. The legal requirement of establishing a relationship between the plaintiff and O-I is central to the question whether the negligence duty sought to be imposed could reasonably be discharged – particularly where, as here, the legal duty is imposed retroactively on a company that ceased the activity in question in 1958. As a matter of common sense and sound public policy, a negligence duty must be reasonably dischargeable at the time of the conduct in question or it amounts to absolute liability. *See Georgia Pacific, LLC v. Farrar*, 69 A.2d 1028, 1039 (2013).

The plaintiff was a child in the 1950s with whom O-I had no relationship whatsoever, either directly or through an employment relationship with another person living in his household. Accepting his allegations as true, Mr. Vernon merely lived file miles from an O-I plant he never visited and walked by a dump owned and operated by someone other than O-I that was about a mile from his home. No New Jersey case – indeed, no case anywhere -- imposes a negligence duty concerning the idiosyncratic exposure claimed here, during the time period (the 1950s) that controls this case. This Court should not be the first to do so.

### IV.   The Plaintiff Admits that the Conspiracy Count is Just a Conclusory Theory in Search of Proof.

The plaintiff frankly admits that he has no proof of the requisite agreement necessary to establish a conspiracy, but suggests that merely making the conclusory

allegation that O-I agreed with unknown entities is good enough to launch a discovery fishing expedition. Pl. Br. at 30-31. The law is otherwise.

"To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2010). A "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The plaintiff's response nowhere acknowledges this burden or explains how it has supposedly been met. He cites no authority whatsoever in the conspiracy section of his brief.

Asbestos litigation involving O-I and the firm of the plaintiffs' counsel has been going on for literally decades. All of the relevant events took place in the 1950s and O-I has been the subject of exhaustive discovery. There are reported decisions, including one from this Court, declaring the lack of a factual basis for a conspiracy claim against O-I. *See, e.g., Ellis v. Pneumo Abex Corp.*, 2013 WL 1099016 (E.D. Pa. Jan. 3, 2013); *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102 (1999).

It is an abuse of the litigation process to press the conspiracy claim further.

## V. CONCLUSION

The plaintiff has been given three tries to state facts establishing a negligence duty running from O-I to Mr. Vernon in the 1950s. He has failed. The SAC should be dismissed with prejudice as to O-I and Mr. Vernon be required to turn his attention to proving his occupational asbestos claim against others.

Dated: September 5, 2019          Respectfully submitted,

**RILEY SAFER HOLMES & CANCILA LLP**

/s/ Robert H. Riley
Robert H. Riley (*admitted pro hac vice*)
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
rriley@rshc-law.com

**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

/s/ Chad D. Mountain
Chad D. Mountain, Esquire (86908)
Three Logan Square
1717 Arch Street, Suite 3710
Philadelphia, PA 19103
cmountain@maronmarvel.com

*Attorneys for Owens-Illinois, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September __, 2019, I served a true and correct copy of these papers upon all counsel of record via electronic filing. These documents have been electronically filed and are available for viewing and downloading from the ECF system.

                                              /s/ Chad D. Mountain
                                              Chad D. Mountain, Esquire (86908)

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2019, a true and correct copy of the foregoing Motion of Defendant Owens-Illinois, Inc. Seeking Leave to File a Reply Brief in Support of Motion for Summary Judgment upon the following counsel of record via electronic filing. These documents have been electronically filed and are available for viewing and downloading from the ECF system.

> William L. Kuzmin, Esquire
> Jacqueline P. Gruhler, Esquire
> Jonathan D. Rubinstein, Esquire
> Cohen, Placitella & Roth, P.C.
> 2001 Market Street, Suite 2900
> Philadelphia, PA 19103

**MARON MARVEL BRADLEY ANDERSON & TARDY LLC**

By: /s/ Chad D. Mountain
Chad D. Mountain, Esquire